Eric A. Richardson, pro se
4275 W Sandalwood Drive
Cedar Hills, Utah 84062
801.935.5506
e_ric_hardson@yahoo.com

FILED
U.S. DISTRICT COURT

2016 JAN 19 A 10: 49

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| UNITED STATES OF AMERICA, | PETITION AND MEMORANDUM IN SUPPORT OF ORDER FOR EARLY TERMINATION OF SUPERVISED RELEASE |
|---|---|
| Plaintiff, | |
| v. | |
| ERIC A. RICHARDSON, | Case No. 2:12-CR-00354-001 DN |
| Defendant. | District Judge David Nuffer |

COMES NOW ERIC A RICHARDSON, in pro se before this Court to respectfully petition for early release from federal supervised release as allowed by Title 18 of the United States Code 3583(e)(1). No hearing is sought in this matter per the Federal Rules of Criminal Procedure 32.1(c)(2)(B).

Case Background

Defendant Eric A. Richardson was charged by Felony Information for one count of bank fraud, 18 USC 1344, under Case Number 2:12-CR-00354-001 out of the District of Utah. Mr. Richardson pled guilty to a single count on November 13, 2012 and was sentenced to a total of one year and one day in custody and a term of three years of supervised release.

Mr. Richardson self-surrendered to the US. Bureau of Prisons in Florence, Colorado on January 7, 2013 as instructed by the court. Mr. Richardson was released from BOP custody on

November 20, 2013 after receiving the maximum amount of good time credit and began his term of supervised release on that same day.

Mr. Richardson has completed over 70% of his supervised release and is in his final year of supervision. Mr. Richardson has complied with the terms of supervision as outlined in his Judgment and Commitment order and has not received any notices of noncompliance from his probation officer, Officer Greg Petersen. Mr. Richardson has successfully completed more than two years of supervision in an exemplary and extraordinary fashion. Mr. Richardson is no longer in need of supervision and seeks to be discharged from supervised release.

## Basis for Request

Courts have "the authority to terminate an offender's supervised release before the original expiration date."[1] Under 18 U.S.C. § 3583(e)(1), a court may terminate an offender's term of supervised release "at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interests of justice."[2] Such early terminations may occur even in cases where a statute originally required the sentencing court to impose a term of supervised release in excess of one year.[3]

## Purpose of Supervised Release

"Congress intended supervised release to assist individuals in their transition to community life"; therefore, "supervised release fulfills rehabilitative ends, distinct from those

---

[1] United States Sentencing Commission, Federal Offenders Sentenced to Supervised Release (2010) http://www.ussc.gov/sites/default/files/pdf/training/annual-national-training-seminar/2012/2_Federal_Offenders_Sentenced_to_Supervised_Release.pdf at (34). Compare also 18 U.S.C. § 3583(c), with 18 U.S.C. § 3583(e).

[2] See 18 U.S.C. § 3583(e)(1) ("The court may . . . terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice.").

[3] United States Sentencing Commission, Federal Offenders Sentenced to Supervised Release (2010) http://www.ussc.gov/sites/default/files/pdf/training/annual-national-training-seminar/2012/2_Federal_Offenders_Sentenced_to_Supervised_Release.pdf at (35).

served by incarceration."[4] "The purpose of supervised release has been variously described as rehabilitation, deterrence, training and treatment, protection of the public, and reduction of recidivism."[5] However, supervised release has a different goal than incarceration. "Supervised release, in contrast to probation, is not a punishment in lieu of incarceration."[6] Supervised release departed from the parole system it replaced by giving district courts the freedom to provide post-release supervision for those, and only those, who need it."[7]

Supervised release was not intended to be imposed for the purposes of punishment or incapacitation, "since those purposes will have been served to the extent necessary by the term of imprisonment."[8] The Supreme Court has described supervised release as "the decompression stage" between prison and full release."[9] Moreover, supervised release is primarily concerned with "'facilitat[ing] the reintegration of the defendant into the community"[10]

---

[4] United States v. Johnson, 529 U.S. 53, 59 (2000).
[5] United States v. Johnson, 529 U.S. 53, 59-60 (2000); United States v. Siegel, 753 F.3d 705, 708, (7th Cir. 2014); United States v. Evans, 727 F.3d 730, 733 (7th Cir. 2013)
[6] United States v. Granderson, 511 U.S. 39, 50 (1994).
[7] United States v. Johnson, 529 U.S. 709 (2000)
[8] S. Rep. No. 98-225, at 125; see also Johnson, 529 U.S. 59 (Supervised release fulfills rehabilitative ends, distinct from those served by incarceration.)
[9] Johnson v. United States, 529 U.S. 694, 709 (2000)
[10] United States v. Vallejo, 69 F.3d 992, 994 (9th Cir. 1995) (quoting USSG §5D1.1 comment. (n.2) (Nov. 1992)). "[T]he basic purpose of probation [is] . . . to provide an individualized program offering a young or unhardened offender an opportunity to rehabilitate himself without institutional confinement under the tutelage of a probation official and under the continuing power of the court to impose institutional punishment for his original offense in the event that he abuses this opportunity." Roberts v. United States, 320 U.S. 264, 272 (1943). The primary purpose of supervised release — to facilitate the reintegration of federal prisoners back into the community — is similar to the purpose of the Second Chance Act of 2007 (Pub. L. No. 110–199), which was intended to "reduce recidivism, increase public safety, and help state and local governments better address the growing population of ex-offenders returning to their communities." H.R. Rep. No.110–140 (2007). The Second Chance Act focuses on "development and support of programs that provide alternatives to incarceration, expansion of the availability of substance abuse treatment, strengthening families of ex-offenders, and the expansion of comprehensive re-entry services." Id. "The goal of [the prison re-entry] initiative is to help America's prisoners by expanding job training and placement services, improving their ability to find transitional housing, and helping newly released prisoners get mentoring, including from faith-based groups." Pub. L. No. 110–199, Statement by President George W. Bush Upon Signing, as reprinted in, 2008 U.S.C.C.A.N. S10. "In this Act, the Congress has directed a shift from policing those on parole to rehabilitating them.)

A term of Supervised Release is imposed on nearly all defendants.[11] Most offenders successfully complete their supervised release,[12] and property offenses have the highest rate of successful completion of supervision at 78.3%.[13] Offenders who had little or no criminal history at the time of their original sentencing committed violations at significantly lower rates than offenders who were in higher criminal history categories at the time of their original sentencing,[14] with 81.3% of offenders in CHC I having their supervision closed successfully.[15] Moreover, only 5.4% of CHC I have their supervision revoked for a major violation.[16] Violations

---

[11] United States Sentencing Commission, Federal Offenders Sentenced to Supervised Release (2010) http://www.ussc.gov/sites/default/files/pdf/training/annual-national-training-seminar/2012/2_Federal_Offenders_Sentenced_to_Supervised_Release.pdf at (4)."From 2005 through 2009, sentencing courts imposed supervised release terms in 99.1 percent of such federal cases where supervised release was not statutorily required....The overwhelming majority of federal offenders sentenced to prison who did not receive terms of supervised release were non-citizens subject to deportation. The data also show that courts imposed supervised release at very high rates regardless of both the offense type (with a few exceptions) and an offender's criminal history. Over 95 percent of offenders in each of the sentencing guidelines' Criminal History Categories (CHCs) I through VI who were sentenced to prison received terms of supervised release."

[12] United States Sentencing Commission, Federal Offenders Sentenced to Supervised Release (2010) http://www.ussc.gov/sites/default/files/pdf/training/annual-national-training-seminar/2012/2_Federal_Offenders_Sentenced_to_Supervised_Release.pdf at (4) "The data on offenders' violations of the conditions of the supervised release show that two-thirds of federal offenders successfully completed their terms of supervision (17.9% of whom were terminated early by sentencing courts based on their compliance with the conditions of supervision), while one-third had their terms revoked and were sent back to prison."

[13] United States Sentencing Commission, Federal Offenders Sentenced to Supervised Release (2010) http://www.ussc.gov/sites/default/files/pdf/training/annual-national-training-seminar/2012/2_Federal_Offenders_Sentenced_to_Supervised_Release.pdf at (65) quoting data obtained from the Administrative Office of the United States Courts, Office of Probation and Pretrial Services (AOUSC-OPPS) provide some relevant information about revocation and modification of supervised release terms from 2003–2008. See also note 267 therein.

[14] United States Sentencing Commission, Federal Offenders Sentenced to Supervised Release (2010) http://www.ussc.gov/sites/default/files/pdf/training/annual-national-training-seminar/2012/2_Federal_Offenders_Sentenced_to_Supervised_Release.pdf at 4

[15] United States Sentencing Commission, Federal Offenders Sentenced to Supervised Release (2010) http://www.ussc.gov/sites/default/files/pdf/training/annual-national-training-seminar/2012/2_Federal_Offenders_Sentenced_to_Supervised_Release.pdf at (66).

[16] United States Sentencing Commission, Federal Offenders Sentenced to Supervised Release (2010) http://www.ussc.gov/sites/default/files/pdf/training/annual-national-training-seminar/2012/2_Federal_Offenders_Sentenced_to_Supervised_Release.pdf at (68). .

of conditions of supervision that result in revocation on average occur early in the supervision process."[17]

The primary purpose of supervised release is to facilitate the integration of offenders back into the community. It is not intended to be a punishment tool.[18] Under 18 U.S.C. § 2583(c), a court, in deciding whether to impose a term of supervised release in a case not mandated by another statue and in deciding the length of the term, must consider most of the same 3553(a) factors that the court must consider in imposing a sentence of imprisonment.[19][20]

<u>Support for Early Termination of Supervised Release</u>

Federal probation officers are encouraged by judiciary policy to provide positive incentives for change. As risk issues are addressed and supervisees meet their objectives, officers respond to such positive changes with graduated reductions in the level of supervision—up to and including early termination of supervision. Under 18 U.S.C. §§ 3564(c) and 3583(e) (1), the

---

[17] United States Sentencing Commission, Federal Offenders Sentenced to Supervised Release (2010) http://www.ussc.gov/sites/default/files/pdf/training/annual-national-training-seminar/2012/2_Federal_Offenders_Sentenced_to_Supervised_Release.pdf at (63): "The fact that offenders on federal supervision who violate the conditions of supervision tend to do so early in their terms of supervision is consistent with findings of other researchers. See, e.g., PEW CENTER ON THE STATES, PUTTING PUBLIC SAFETY FIRST: 13 STRATEGIES FOR SUCCESSFUL SUPERVISION AND REENTRY, 7 PUBLIC POLICY BRIEF 2 (Dec. 2008) ("Research clearly identifies the period immediately following release from prison and jail as a particularly high-risk time for offenders.")."

[18] See S. Rep. No. 98-225 at 124 (1983) (explaining that the goal of supervised release is "to ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense, or to provide rehabilitation to a defendant who has spent a fairly short period in prison for punishment or other purposes but still needs supervision and training programs after release").

[19] Those factors are: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need . . . to afford adequate deterrence and criminal conduct"; (3) "the need . . . to protect the public from further crimes of the defendant"; (4) "the need . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; (5) any applicable sentencing guidelines and "any pertinent policy statements"; (6) "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct"; and (7) "the need to provide restitution to any victims of the offense."

[20] United States Sentencing Commission, Federal Offenders Sentenced to Supervised Release (2010) http://www.ussc.gov/sites/default/files/pdf/training/annual-national-training-seminar/2012/2_Federal_Offenders_Sentenced_to_Supervised_Release.pdf at (9): "Notably, the only section 3553(a) factor not relevant to a court's decision of whether to impose supervised release (and, if so, how long the term should be) is 'the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.'" See also 18 U.S.C. § 3553(a)(2)(A).

court may terminate terms of probation in misdemeanor cases at any time and terms of supervised release or probation in felony cases after the expiration of one year of supervision if satisfied that such action is warranted by the conduct of a supervisee and is in the interest of justice. Policy directs officers to consider the suitability of early termination for supervisees as soon as they are statutorily eligible.[21]

Post *Booker,* the guidelines in USSG 7B1.3(f) are advisory,[22] and were so for supervised release even before hand. Before modification, termination, or revocation may occur, a court must consider the nine policy factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), & (a)(7)."[23] These nine policy factors, named Monograph 109, take a closer look at the offender, including: 1) Stable community reintegration (e.g., residence, family, employment); 2) Progressive strides toward supervision objectives and in compliance with all conditions of supervision; 3) No aggravated role in the offense of conviction, particularly large drug or fraud offenses; 4) No history of violence (e.g., sexually assaultive, predatory behavior or domestic violence); 5) No recent arrests or convictions (including unresolved pending charges), or ongoing, uninterrupted patterns of criminal conduct; 6) No recent evidence of alcohol or drug abuse; 7) No recent psychiatric episodes; 8) No identifiable risk to the safety of any identifiable victim; and 9) No identifiable risk to public safety based on the Risk Prediction Index

---

[21] Federal Probation Journal, September 2013, http://www.uscourts.gov/file/fedprob3rdproofssept13082213epdf, at (8)

[22] See U.S. v. Booker, 543 U.S. 220 (2005)

[23] United States Sentencing Commission, Federal Offenders Sentenced to Supervised Release (2010) http://www.ussc.gov/sites/default/files/pdf/training/annual-national-training-seminar/2012/2_Federal_Offenders_Sentenced_to_Supervised_Release.pdf at (34). Compare also 18 U.S.C. § 3583(c), with 18 U.S.C. § 3583(e).

Addressing these U.S.C. § 3553 factors in order, Mr. Richardson is stable in the community and has successfully reintegrated. He resides with his wife and four young children. He has lived in the same home for over nine years and in the same small town for over fifteen years. Mr. Richardson started work within one week of his release and worked his way up from an entry level job to a leadership role. With permission of his probation officer, Mr. Richardson has completed eight out-of-state business trips, each without incident. At times, Mr. Richardson has worked more than one job, including assisting his wife in her restaurant business. Since his release, Mr. Richardson has regularly worked more than 60 hours per week. Mr. Richardson has returned to school to finish his college degree and will graduate from the University of Utah at the end of this semester. Mr. Richardson has coached youth sports for his children, is a scouting volunteer, has volunteered for nonprofit organizations including Kids Kampus, and is active in his church congregation. Mr. Richardson is busy and engaged in giving back to community, and the future is bright for Mr. Richardson.

Second, Mr. Richardson has complied with all terms of his supervision and has not received any notices of violation. He has timely reported to his probation officer as instructed and completes his monthly reports and pays his restitution in a timely manner. USPO Officer Greg Petersen has been a tremendous support to Mr. Richardson in helping him progress and reintegrate. Mr. Richardson has seen the power of a strong support system, and would like to help individuals convicted of crimes with their reintegration. He plans on doing so after his supervised release is terminated (and the prohibition of association with others convicted of a crime is lifted).

Third, Mr. Richardson did not play an aggravated role in his offense, and in fact played a minor role. Prior to sentencing, Mr. Richardson sold the automobile that was the collateral for his

bank fraud offense and repaid the bank loan in full using the sale proceeds. He also sold his two other automobiles and used the sale proceeds to repay their loans in full. Mr. Richardson has made restitution payments as directed by his probation officer. In his case, Mr. Richardson also agreed to and accepted responsibility for a relevant conduct loss amount of $330,000, as defined by U.S.S.G 1B1.3(a)2, from which government records show Mr. Richardson received less than $1,000. Last year, the US Attorney for the Middle District of Florida brought charges against six co-conspirators involved with the $330,000 loss. Co-conspirators Mitchell Holland, Warren Rosenfeld and Rondell Hedrick were found guilty at trial, co-conspirators Christopher Jaijairam and Glen Smith both plead guilty, and indicted Juan Hernandez is reportedly still a fugitive. Regarding Mr. Richardson's role in the offense, Mr. Richardson had little to no contact with all but one of the co-conspirators. The US Government seized assets in excess of $500,000 related to the indictment.[24] Mr. Richardson has and continues to accept full responsibility for his role in the crime and has accepted accountability.

Fourth, Mr. Richardson does not have any history of violence. Prior to sentencing, he had zero criminal history points. Mr. Richardson had not even had a moving violation since he was 18 years old.

Fifth, Mr. Richardson is not aware of any unresolved or pending charges, and has no reason to believe that any would exist. He has not been contacted by law enforcement regarding involvement with any crimes. Mr. Richardson has not been involved with illegal activities since being charged and has maintained a clear record while on supervised release.

Sixth, Mr. Richardson does not use illegal drugs or alcohol and does not abuse substances, nor has he ever.

---

[24] See 3:14CR 73 J 34 JRK

Seventh, Mr. Richardson has not experienced any psychiatric episodes and is not under the care of a physician for any disorders.

Seventh, there is no identifiable risk to the safety of any identifiable victim. Mr. Richardson pays his court order restitution in a timely manner as directed by his probation officer. Mr. Richardson has not had victim contact. There is no meaningful risk that any identifiable victim would be harmed by the termination of Mr. Richardson's supervised release.

Finally, there is no identifiable risk to public safety. Mr. Richardson has conducted himself in an outstanding manner since his release. He is active in his community and is a loving father and husband. He has a strong support network and has made significant strides in improving his life and reducing any chance of recidivism. Mr. Richardson has been on the lowest level of supervision for nearly two years. Over four weeks ago, Officer Greg Petersen informed Mr. Richardson that he would no longer be his probation officer, and as of this time, the US Probation Office has not yet assigned a new officer, signifying that they also view Mr. Richardson as extremely low risk. There are no risk factors that should prevent him from having his supervision terminated at this time.

Mr. Richardson has taken seriously the lessons to be learned from his conviction. While incarcerated, Mr. Richardson signed up for and took an incredible 271 hours of re-entry programing and classes. He worked two jobs, and was the leader of his church group in prison. He taught classes to other inmates. At the half-way house, Mr. Richardson accelerated his programming and completed the nine re-entry readiness modules during his first week at the halfway house and started fulltime work within a week of arrival. While on supervision, he has attended seminars on re-entry including attending Pathways, read books and articles on successful reintegration, and has been very proactive in taking steps to re-integrate and avoid

recidivism. He has used his probation officer not as a cop to monitor compliance, but as a trusted advisor on moving forward as a positive contributor to society. Mr. Richardson poses an extraordinarily low risk of general recidivism. Organically, Mr. Richardson has shown he is ready for his supervised release to be terminated and is only lacking the ordinary passage of mechanical time or the appropriate and appreciated action of this court in terminating his supervised release early.

## Summary

"The use of early termination [of supervised release] is consistent with the risk principle of evidence-based practices. The risk principle suggests that offenders be supervised at levels commensurate with their overall risk levels. Therefore, when an offender is statutorily eligible and meets Judicial Conference-approved eligibility criteria, early termination is consistent with the risk principle. This frees up resources to more effectively supervise higher-risk offenders."[25]

Offenders with no prior criminal history are at significantly lower risk of reoffending, with only 5.4% of CH I being revoked. Mr. Richardson has no prior criminal history. Violations that do occur are most likely to happen early in the term of supervised release. Mr. Richardson has completed over 70% of his term of supervised release without violation and his supervised release will naturally terminate later this year. The primary purpose of supervised release is to facilitate the integration of offenders back into the community. It is not intended to be a punishment tool. Mr. Richardson has successful reintegrated back into the community in an exemplary and extraordinary fashion. There are no Monograph 109 factors that should preclude Mr. Richardson's supervised release from being terminated early, for which he is statutorily eligible. Mr. Richardson has been on the lowest level of supervision for two years, and does not

---

[25] Federal Probation Journal, September 2015, http://www.uscourts.gov/file/18527/download, at (37)

currently have an assigned probation officer. It would better serve the community and be in the interest of justice for the new probation officer to be able to devote his/her time to those who are clearly in greater need of supervision. Post-release supervision is for those, and only those, who need it.[26]

Rule 32.1(c) states: (1) In General. Before modifying the conditions of probation or supervised release, the court must hold a hearing, at which the person has the right to counsel and an opportunity to make a statement and present any information in mitigation. (2) Exceptions. A hearing is not required if: (a) the person waives the hearing; or (b) the relief sought is favorable to the person and does not extend the term of probation or of supervised release; and (c) an attorney for the government has received notice of the relief sought, has had a reasonable opportunity to object, and has not done so.[27]

Based on Mr. Richardson's successful performance on supervised release and statutory eligibility, he hereby requests that this court terminate his supervised release forthwith pursuant to 18 U.S.C § 3583(e)(1). Anticipating no objection from the government of the relief sought, Mr. Richardson waives his right to a hearing on this matter and requests that the Court grant the request without hearing, notwithstanding that should the government object to the relief requested, Mr. Richardson respectfully petitions that a hearing be held in accordance with Rule 32.1(c) and that court appoint counsel for him. Should the Court have any questions about Mr. Richardson's performance on supervised release and the basis for the request for early termination, Mr. Richardson has no objection to the Court contacting USPO Greg Petersen directly.

---

[26] United States v. Johnson, 529 U.S. 709 (2000)
[27] Fed. R. Crim. P. 32.1(c)(1)

Respectfully submitted this 19th day of January, 2016.

BY ERIC A. RICHARDSON

/s/ Eric A Richardson
Eric A. Richardson, Defendant pro se

## Certificate of Service

I HEREBY CERTIFY that a true and correct copy of the foregoing PETITION AND MEMORANDUM IN SUPPORT OF ORDER FOR EARLY TERMINATION OF SUPERVISED RELEASE has been furnished via email to: Stewart Young, Assistant U.S. Attorney; and via U.S. Mail to: US Probation Office, this 19th day of January, 2016

BY ERIC A. RICHARDSON

/s/ Eric A. Richardson
Eric A. Richardson, Defendant pro se